CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
*224 ¶1 James Colburn appeals from his October 2013 convictions in Ravalli County District Court of the offenses of incest, sexual intercourse without consent and sexual assault. We reverse the convictions and remand for a new trial.
¶2 We consider the following issues:
¶3 Issue 1: Whether the District Court erred when it disqualified Colburn’s expert witness from testifying at trial.
¶4 Issue 2: Whether the District Court erred in its application of the Rape Shield Law to exclude evidence that Colburn offered at trial.
BACKGROUND
¶5 In 2013 the State charged Colburn with two counts of incest, § 45-5-507, MCA; one count of sexual intercourse without consent, § 45-5-503, MCA; and two counts of sexual assault, § 45-5-502, MCA, all felonies. In October 2013 the jury convicted Colburn of all of the charged offenses. In February 2014 the District Court entered judgment sentencing Colburn to terms of imprisonment on each of the convictions. Colburn appeals.
STANDARD OF REVIEW
¶6 We review a district court’s rulings on the admission of evidence, including the admission of expert testimony, for abuse of discretion. Beehler v. Eastern Radiological Assoc., 2012 MT 260, ¶ 17, 367 Mont. 21, 289 P.3d 131. We review a district court’s application of a statute to determine whether the application was correct. Beehler, ¶ 17.
DISCUSSION
¶7 Issue 1: Whether the District court erred when it disqualified Colburn’s expert witness from testifying at trial.
¶8 Rule 702 of the Montana Rules of Evidence allows a person qualified by knowledge, skill, experience, training or education to testify “in the form of an opinion or otherwise” if “scientific, technical or other specialized knowledge” will assist the jury to understand the evidence or determine a fact in issue. We have encouraged district courts to “construe liberally the rules of evidence so as to admit all relevant expert testimony,” subject to “stringent cross-examination.” State v. Damon, 2005 MT 218, ¶ 19, 328 Mont. 276, 119 P.3d 1194; Beehler, ¶ 23. The District Court determined in this case that expert testimony would be appropriate in assisting the jury to understand issues concerning forensic interview techniques.
¶9 The sexual intercourse without consent and sexual assault *225 charges against Colburn related to incidents between Colburn and a neighbor girl referred to as R.W. Those incidents occurred when she was age eleven. The State called R.W. as a witness at trial. She testified to encounters with Colburn in which he touched her private parts manually and with his penis. The two incest charges related to incidents between Colburn and his own daughter, referred to as C.C., also age eleven. The State called C.C. as a witness at trial. She denied generally that Colburn had done anything wrong to her.
¶10 The State also presented the testimony of Nurse Practitioner Mary Hansen, a clinical supervisor with a children’s advocacy and adult sexual assault program at St. Patrick Hospital in Missoula. She has an undergraduate degree in sociology and a master’s degree in nursing. She is licensed and certified as a pediatric nurse practitioner. She has attended several courses in sexual assault examiner training for nurses, a course in medical assessments of children, as well as attending several conferences in San Diego on child abuse. She testified that a forensic interview is a “structured conversation” with a child who may have been a victim of a crime. She testified that she has been trained in several different schools of forensic interview techniques, including those offered by the American Prosecutor’s Research Institute, by First Witness, and by the American Professional Society on Abuse of Children. She testified that she has “a lot of familiarity with many different models” of forensic interviewing, and that there is no certification program or requirement for forensic examiners. Several times in her testimony she characterized forensic interviewing as both a science and an art that requires “a judgment call [to determine] when you’re done.”
¶ 11 Hansen interviewed both girls and testified that she followed “best practices” in her interviews. Hansen described disclosures that R.W. made to her about sexual incidents with Colburn. Hansen testified that in her opinion R.W.’s statements to her were consistent with those of a child who had experienced sexual abuse. Hansen opined that R.W. “provided details that were sexual knowledge that a child may not have unless they’ve had the experience of sexual abuse.” (Emphasis added.)
¶12 Hansen also testified about her interview with C.C. during which C.C. described inappropriate touching by her father. The prosecution played a video of Hansen’s interview with C.C., which was the major direct evidence to support the incest charges against Colburn.
¶13 Prior to trial Colburn disclosed that he intended to call Dr. Donna Zook as an expert in child psychology and forensic interview techniques, to critique the techniques used by Hansen in her interview of C.C. The State interviewed Zook prior to trial.
*226 ¶14 At trial, Zook testified that she had a doctorate degree in clinical psychology and that her training included 2000 hours in a pre-doctoral internship dealing with juvenile offenders as well as a 3000-hour postdoctoral experience with the Golden Triangle Community Mental Health Center in Havre, Montana. She is a member of the American College of Forensic Examiners and is included in the National Register of Health Service Providers. She has taught psychology at the University of Great Falls. Zook testified that she has done hundreds of juvenile interviews as part of psychological assessments or evaluations. She has also done over twenty critiques of forensic interviews conducted by others and has testified as an expert forensic psychologist hundreds of times.
¶15 The defense made an offer of proof that Zook would testify that Hansen used leading or suggestive questions when interviewing C.C., and would describe the result of those questions as reflected in C.C.’s interview. The State objected to Zook’s qualification to criticize Hansen’s interviews with the victims. The District Court became involved in examining Zook as to her qualifications, focusing on her familiarity with an interviewing protocol adopted by the National Institute of Child Health and Human Development (referred to in the record as the “NICHD”). Zook testified that she was familiar with that forensic interviewing protocol, and that while it was only one of several such protocols, it had been developed by using empirical research. She testified that she had not completed a 40-hour course in the protocol offered by the Institute.
¶16 The District Court determined that the area of forensic interviewing techniques was an area that would be appropriate for expert testimony to assist the jury. The District Court further determined that the NICHD interviewing technique was the “gold standard” for forensic interviews of children, and apparently that it was the technique employed by Hansen in her interviews with the victims in this case. Based upon Zook’s lack of specific training in the NICHD interviewing protocol, the District Court concluded that she was “not qualified in this area of NICHD criticism.” The District Court excluded Zook from testifying as an expert witness.
¶17 While the District Court concentrated on whether Zook had been extensively trained in the NICHD interview protocol, Hansen never mentioned that protocol in her testimony. She did not list it as one of the several interview protocols that she had been trained in, and did not testify that she used the protocol in the interview of either victim in this case. Colburn asserts on appeal that the NICHD interview protocol does not appear anywhere in the record except in the District *227 Court’s questioning of Zook’s qualifications. The State does not refute this assertion.
¶18 It is clear to this Court that Zook was qualified by both education and experience to provide a critique of Hansen’s interviewing technique as it related to leading or suggestive questions and the effect that such questions could have on the results. Significantly, neither side contends that any properly-administered child forensic interview should rely upon results obtained through leading or suggestive questions. The District Court “too narrowly conceived the subject matter” at issue here by constraining it to whether Zook was qualified in the NICHD interview protocols. Beehler, ¶ 25. Given the importance of the taped interview following CC’s general denial that Colburn had assaulted her, Zook’s expert opinion about the interview technique was a significant exclusion. The District Court abused its discretion in excluding Dr. Zook from testifying at trial.
¶19 Issue 2: Whether the District Court erred in its application of the Rape Shield Law to exclude evidence that Colburn offered at trial.
¶20 Colburn asserts that his defense to the charges involving R.W. was that the allegations were fabricated. Both before trial and at trial he sought to introduce evidence that R.W. had a motive to fabricate allegations against him, and that there was an alternative source for her knowledge of the details of sexual behavior other than anything he had done. The defense theory was that R.W. used her allegations against Colburn to determine whether her mother would believe her and, if so, to then disclose that her own father had abused her. Similarly, the defense theory was that the source of R.W.’s detailed knowledge of sexual abuse came not from Colburn but from abuse inflicted by her own father.
¶21 The District Court excluded any evidence that R.W. had any sexual encounter with any other person, based upon the Montana Rape Shield Law. That law provides:
Evidence concerning the sexual conduct of the victim is inadmissible in prosecutions under this part except evidence of the victim’s past sexual conduct with the offender or evidence of specific instances of the victim’s sexual activity to show the origin of semen, pregnancy or disease that is at issue in the prosecution.
Section 45-5-511(2), MCA. The District Court determined that R.W. was absolutely protected by this statute, and that it prohibited introduction of any evidence that she had sexual contact with any *228 other person.[1]
¶22 In 1975, Montana joined most other states by adopting a rape shield law. See Ch. 129, L. 1975.[2] Under the Rape Shield Law, “evidence concerning the sexual conduct of the victim” is inadmissible in a criminal prosecution, with very limited exceptions not at issue here.[3] Section 45-5-511(2), MCA. Montana’s Rape Shield Law is designed to prevent the trial of the charge against the defendant from becoming a trial of the victim’s prior sexual conduct. State v. Higley, 190 Mont. 412, 422, 621 P.2d 1043, 1050-51 (1980). Rape shield laws generally protect victims from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior. Michigan v. Lucas, 500 U.S. 145, 146, 111 S. Ct. 1743, 1745 (1991); State v. Anderson, 211 Mont. 272, 283, 686 P.2d 193, 199 (1984). The statute reflects a compelling state interest in keeping a rape trial from becoming a trial of the victim. Anderson, 211 Mont. at 283, 686 P.2d at 199. Rape shield laws evolved from society’s recognition that a rape victim’s prior sexual history is irrelevant to issues of consent or the victim’s propensity for truthfulness. Tanya Bagne Marcketti, Rape Shield Laws: Do They Shield the Children?, 78 Iowa L. Rev. 751, 754-55 (1993).
¶23 Although rape shield legislation originally focused on adult rape victims, most jurisdictions also include child victims of sexual abuse within the protections of their rape shield statutes. The policies underlying the application of rape shield statutes to adult victims apply to child victims, as well: rape shield statutes eliminate the need for victims to defend incidents in their past and minimize the trauma of testifying. Marcketti at 756.
¶24 Conflict can arise between rape shield statutes and a defendant’s rights to confront his accuser and to present evidence at trial in defense of the charge against him. A defendant charged with a crime has a right to confront his accusers, arising from the Sixth Amendment *229 to the United States Constitution and Article II, Section 24 of the Montana Constitution. State v. MacKinnon, 1998 MT 78, ¶ 33, 288 Mont. 329, 957 P.2d 23. A defendant has a similarly-based right to present evidence in his defense. State v. Johnson, 1998 MT 107, ¶ 22, 288 Mont. 513, 958 P.2d 1182.
¶25 Neither the Rape Shield Law nor the defendant’s right to confront and present evidence are absolute. MacKinnon, ¶ 33; Johnson, ¶¶ 22-23. The Rape Shield Law therefore cannot be applied to exclude evidence arbitrarily or mechanistically, Johnson, ¶ 21, and it is the trial court’s responsibility to strike a balance in each case between the defendant’s right to present a defense and a victim’s rights under the státute. State v. Lindberg, 2008 MT 389, ¶ 53, 347 Mont. 76, 196 P.3d 1252. A court balancing the interests of the defendant with those protected by the Rape Shield Law should require that the defendant’s proffered evidence is not merely speculative or unsupported. Johnson, ¶ 24; Lindberg, ¶ 56. Here, the proffered evidence that R.W. was abused by her father was neither speculative nor unsupported, given that he was convicted on charges stemming from his sexual assaults against his daughter. The court should consider whether the evidence is relevant and probative (Rules 401 and 402, M. R. Evid.); whether the evidence is merely cumulative of other admissible evidence; and whether the probative value of the evidence is outweighed by its prejudicial effect (Rule 403, M. R. Evid.). Commonwealth v. Fernsler, 715 A.2d 435, 440 (Pa. Sup. Ct. 1998). The purpose of these considerations is to ensure a fair trial for the defendant while upholding the compelling interest of the Rape Shield Law in preserving the integrity of the trial and keeping it from becoming a trial of the victim. Anderson, 211 Mont. at 283, 686 P.2d at 199.
¶26 Colburn contends that the District Court’s application of the Rape Shield Law in this case frustrated his ability to respond to two crucial pieces of evidence against him: R.W.’s statement that Colburn sexually abused her, and Hansen’s testimony that R.W.’s knowledge of sexual activity likely came from her having experienced sexual abuse. Colburn proposed to introduce evidence that R.W., following the allegation that he had abused her, alleged that she had been abused by her own father. He also proposed to introduce evidence that R.W. said that she determined that she could make the allegations about her father because her allegations about Colburn had been taken seriously, thus tying her disclosure in the two cases together. In addition, Colburn contended that evidence that R.W. had been abused by her own father was crucial to counter or at least contextualize the testimony of Hansen that R.W.’s detailed knowledge of sexual activities must have *230 arisen from her being sexually abused.
¶27 Colburn’s defense to the charges involving R.W. depended upon undermining the credibility of her account that he abused her. It substantially depended upon undermining Hansen’s endorsement of the credibility of R.W.’s account of Colburn’s acts of abuse.[4] Thus, from Colburn’s point of view, the proposed evidence was an essential part of his important right to confront the witnesses against him and to mount a meaningful defense to the charges.[5]
¶28 At the same time, the Montana Rape Shield Law has long been construed to not automatically exclude evidence that “can be narrowed to the issue of the complaining witness’ veracity .’’ Anderson, 211 Mont. at 284, 686 P.2d at 200.[6] The district court has the power and responsibility to manage the defense evidence to prevent “sordid probes into a victim’s past sexual conduct.” Anderson, 211 Mont. at 284, 686 P.2d at 200. In Lindberg, for example, the district court allowed the defendant in a sexual abuse case to present evidence that his objection to the victim’s relationship with another person provided motivation to fabricate charges of abuse to remove the defendant from the household. However, the defendant was not allowed to present evidence concerning the sexual nature of that relationship.
¶29 Such restrictions represent the balancing of the interests involved without wholly sacrificing the interests of the defense or the victim. In the present case the District Court’s statements excluding Colburn’s proffered evidence show no weighing of his rights to present *231 a defense with the interests represented by the Rape Shield Law. The District Court abused its discretion by mechanistically applying the Rape Shield Law to exclude Colburn’s proffered evidence.
¶30 After careful consideration of the record and the parties’ arguments and authorities, we reverse the convictions and remand to the District Court for a new trial.
JUSTICES WHEAT, COTTER, BAKER, SHEA and RICE concur.

 Although this evidence did not go before the jury, the record reflects that R.W.’s father was charged with five counts of incest and eventually pled guilty to sexual assault.

 In 1985, Montana broadened the applicability of its Rape Shield Law to include cases involving all types of sexual crimes. See Sec. 3, Ch. 172, L. 1985.

 The statutory exceptions are evidence of the victim’s past sexual conduct with the offender, or evidence of specific instances of the victim’s sexual activity to show the origin of semen, pregnancy, or disease that is at issue in the prosecution.

 State v. Stuit, 268 Mont. 176, 885 P.2d 1290 (1994), is not dispositive of the present case. There the defendant argued that he should have been allowed to present evidence of prior sexual encounters involving the victim because the prosecution “opened the door” in its opening statement. This Court affirmed the District Court’s ruling excluding the evidence because the defendant failed to make a contemporaneous objection.

 Colburn’s ability to counter Hansen’s endorsement of R.W.’s credibility was also substantially hampered by the District Court’s exclusion of the proposed testimony of Zook.

 The State cites State v. Van Pelt, 247 Mont. 99, 805 P.2d 549 (1991), for the proposition that attacking the credibility of a witness is insufficient reason for admitting evidence that may be covered by the Rape Shield Law. However, this Court held that the conduct involved in the prior abuse could not be the source of knowledge of sexual activity involved in the case, and later cases, including Anderson and Johnson, hold that an attack upon the complaining witnesses’ veracity does not per se run afoul of the Rape Shield Law.