Justice Ingrid Gustafson delivered the Opinion of the Court.
***96 ¶1 In 2017, we decided State v. Pope , 2017 MT 12, 386 Mont. 194, 387 P.3d 870 ( Pope I ), which, in relevant part, remanded the matter to the Twenty-First Judicial District Court, Ravalli County, to determine the appropriate sanction for discovery abuse by the State. Jody Jake Pope (Pope) appeals following the District Court's July 6, 2017, Sanction Order on Remand, which issued financial sanctions against the State and denied his request for a new trial. We affirm.
¶2 We restate the issue on appeal as follows:
Did the District Court abuse its discretion by issuing only a financial sanction against the State for discovery abuse?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 The factual background regarding the underlying offense in this matter was set forth in our decision in Pope I and need not be completely repeated here. In 2013, Pope was charged with attempted ***97 deliberate homicide, assault with a weapon, and driving while license suspended or revoked after an incident in which the State alleged that Pope intentionally hit his then-girlfriend, Susan Myers (Myers), with his van on Highway 93 in Ravalli County. In January 2014, Myers wrote to the District Court and stated that Pope did not hit her with his van. Myers similarly told defense counsel that the incident was overblown and that nothing happened during interviews prior to trial.
¶4 During jury selection on the first day of trial in June 2014, the State's investigator, James Hulme (Hulme), conducted a recorded interview with Myers. During this interview, Myers told Hulme that Pope had indeed driven at her and struck her with his van. Myers stated that she had injured her ribs in the collision and that she believed she was knocked unconscious by the impact. After court proceedings ended that day, Deputy County Attorney Thorin Geist (Geist) viewed the video of Hulme's interview with Myers. Geist determined that the State would not disclose the video to Pope, and informed Pope's counsel, Jennifer Streano (Streano), that Hulme had met with Myers, but did not inform her that the interview was recorded. Streano was not able to re-interview Myers herself.
¶5 Trial resumed the next day, and Geist informed Streano shortly before Myers was set to testify that Hulme's interview with Myers the previous day was in fact recorded. Streano informed the District Court, requested the State produce the video, and asked for time to review the video before Myers testified. The State refused to produce the video. The District Court ruled that the State did not have to produce the video, and Myers ultimately testified consistently with her statements to Hulme the previous day and contradicted her other pre-trial statements regarding the incident. Myers testified that Pope "drove the van" at her and "tried to *471 hit" her with the van. Myers further testified that her previous inconsistent statements were made to "try to help," and to her belief that Pope's counsel had "tricked" her.
¶6 After the State rested its case, Streano again argued that the State should have provided the video of Myers's interview and that she was unable to properly impeach Myers's credibility because Myers's testimony was so different than that given in her other pre-trial interviews. After the settling of jury instructions, Streano asked to view the video overnight to determine issues she should raise with the District Court to preserve for appeal. The State again refused to produce the video and the District Court sealed the video and placed it in the record.
¶7 Before trial resumed the next day, Pope moved for a mistrial as a sanction for the State's failure to provide the video of Myers's interview ***98 with Hulme. Pope asserted that he would have presented his case differently had he known that Myers was going to change her testimony from her earlier statements about the incident. The District Court denied Pope's motion for a mistrial and found that the State had no obligation to disclose the video. The jury found Pope not guilty of attempted deliberate homicide, but guilty of assault with a weapon and driving while license suspended or revoked. The District Court sentenced Pope on the assault with a weapon charge to the Department of Corrections (DOC) for 20 years, with ten years suspended, and on the driving while license suspended or revoked charge to the Ravalli County Detention Center for six months, to run consecutively to the DOC sentence.
¶8 Pope appealed to this Court, arguing that the State wrongfully withheld the video of Myers's interview with Hulme. Pope asked this Court to remand to the District Court so that the District Court could determine the appropriate sanction for the State's discovery abuse. On appeal, the State conceded that it wrongfully withheld the video, but argued that Pope suffered no prejudice and therefore the matter need not be remanded to the District Court for the imposition of a possible sanction. This Court, in Pope I , remanded to the District Court to determine the appropriate sanction.
¶9 On remand, Pope asked for either a new trial or "any other sanction the [District] Court feels is appropriate for the States' [sic] discovery abuse." The State, after conceding on appeal that it wrongfully withheld the video from Pope-and this Court's decision in Pope I clearly noting the State's duty to disclose the video-bizarrely insisted that it "was under no obligation to provide the video-recording - or even to inform the Defendant that it existed - until it was requested on the second day of trial." Pope, in his reply brief, again asked for a sanction granting a new trial, "or other sanctions[.]" The District Court held a hearing on Pope's motion for sanctions. After the hearing, the District Court issued a written order finding that Pope was not prejudiced by the State's discovery abuse in this case and therefore a new trial was not warranted, as well as issuing a financial sanction against the State. Pope appeals.
STANDARD OF REVIEW
¶10 We review a district court's decision regarding matters of discovery for an abuse of discretion. Pope I , ¶ 16 (citing State v. Golder , 2000 MT 239, ¶¶ 7, 11, 301 Mont. 368, 9 P.3d 635 ). A district court abuses its discretion if it acts arbitrarily, unreasonably, or without employing conscientious judgment, resulting in substantial injustice.
***99 State v. Hart , 2009 MT 268, ¶ 9, 352 Mont. 92, 214 P.3d 1273.
DISCUSSION
¶11 Did the District Court abuse its discretion by issuing only a financial sanction for the State's discovery abuse?
¶12 In our decision in Pope I , at Pope's request, we remanded to the District Court to determine the appropriate sanction for the State's discovery abuse. Montana's criminal discovery statutes empower district courts to issue sanctions commensurate with a party's discovery abuses:
If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with any of the provisions of this part or *472 any order issued pursuant to this part, the court may impose any sanction that it finds just under the circumstances, including but not limited to:
(1) ordering disclosure of the information not previously disclosed;
(2) granting a continuance;
(3) holding a witness, party, or counsel in contempt for an intentional violation;
(4) precluding a party from calling a witness, offering evidence, or raising a defense not disclosed; or
(5) declaring a mistrial when necessary to prevent a miscarriage of justice.
Section 46-15-329, MCA. A district court is not limited to only the enumerated sanctions listed above, as the statute expressly provides that the court may impose any sanction it finds just under the circumstances. Pope I , ¶ 26 (citing § 46-15-329, MCA ).
¶13 The circumstances of the present appeal are quite unique. At Pope's trial, he asked for a mistrial based on the State's refusal to provide the recorded interview of Myers. The State argued that it had no duty to disclose the interview because it did not contain exculpatory material. The District Court agreed with the State and denied Pope's motion for a mistrial. Pope then appealed to this Court-and asked for us to remand the matter to the District Court to determine the appropriate sanction for the State's discovery abuse. On appeal, the State conceded that it wrongfully withheld the recorded interview but argued that Pope was not prejudiced. We remanded to the District Court to determine the appropriate sanction because "[i]mposition of sanctions is a matter best left to the sound discretion of the district court. Such discretion allows the court to consider the reason why ***100 disclosure was not made, whether noncompliance was willful, the amount of prejudice to the opposing party, and any other relevant circumstances." Pope I , ¶ 25 (quoting State v. Waters , 228 Mont. 490, 495, 743 P.2d 617, 621 (1987) ).
¶14 The District Court, in its written order, determined that a sanction was warranted "in light of the State's willful, irrational, unreasonable, and still unacknowledged discovery abuse." It did not grant Pope a new trial, however, because of a "lack of prejudice to Pope." While an analysis focusing solely on whether the State's error was ultimately harmless is not necessarily appropriate when determining how the State should be sanctioned for discovery abuses, the District Court did not abuse its discretion when it denied Pope a new trial due to a lack of prejudice and issued a financial sanction against the State under the unique circumstances of this case.
¶15 The District Court's written order addressed each of the factors relevant to a sanctions decision-reasons the disclosure was not made, willfulness, amount of prejudice, and other relevant circumstances-before determining that a mistrial was not warranted and a financial sanction against the State was appropriate. The State conceded that its noncompliance with its discovery obligations was willful in this case, but argued that its noncompliance was due to a reasonable, but mistaken understanding of the law. The District Court found that the State's reason for not disclosing the evidence-misunderstanding the law-was "based upon an unreasonable error rooted in extreme carelessness, not an intent to subvert the discovery process." We have previously held that the State was clearly required by §§ 46-15-322 and -327, MCA, to produce the recorded interview to Pope. Pope I , ¶¶ 21-24. The District Court therefore correctly found that the State's behavior in not disclosing the recorded interview was both wrong and willful. Even though the State's actions were blatantly wrong, the District Court ultimately declined to grant a mistrial because it found that Pope was not prejudiced.
¶16 In addressing whether Pope was prejudiced by the State's discovery abuse, the District Court first addressed the long personal history between Pope and Myers. The pair were involved in a relationship at the time of the incident and for several months after. Pope was ordered not to have any contact with Myers after his arrest, but repeatedly violated that no-contact order. Pope's violations included calling Myers from jail and, after posting bond in December 2013, living with Myers. While Pope was *473 living with her, Myers made her statements to counsel that Pope did not strike her with his van. ***101 Myers also wrote a letter to the District Court stating Pope did not hit her with his van during this time. In March 2014, Pope was again arrested for violating conditions of his bond. At a March 13, 2014, hearing, Pope did not contest that he violated the conditions that prohibited him from contacting Myers and drinking. Pope then remained in jail until trial. At some point prior to trial, Pope and Myers broke up.
¶17 Pope argued to the District Court-and again argues here-that his ability to effectively cross-examine Myers and cast doubt on her truthfulness was so damaged by the State withholding the recorded interview that a new trial is warranted regardless of the strength of other evidence of his guilt. The District Court addressed Pope's contentions regarding cross-examination and Myers's character for truthfulness in its written order. The District Court found that, while Pope's attorney may have changed the tone of her cross-examination of Myers, Pope was not prejudiced in his cross-examination because Pope had sufficient evidence through other means that Myers was going to change her story and claim that Pope did strike her with his van. With regard to Pope's claim that he was not able to challenge Myers's character for truthfulness, the District Court again found no prejudice, because Myers herself had both changed her story before and admitted to her untruthfulness while testifying. Finally, the jury acquitted Pope of the most serious charge in this case-attempted deliberate homicide-which supports the District Court's finding that Pope was not prejudiced at trial by the State wrongfully withholding the recorded interview of Myers.
¶18 The District Court did not make its decision in this case "arbitrarily, unreasonably, or without employing conscientious judgment, resulting in substantial injustice." Hart , ¶ 9. While a new trial as a sanction for the State's discovery abuse certainly would have been within the District Court's discretion in this case, its ultimate decision to deny a new trial due to a lack of prejudice and issue financial sanctions against the State was also within its discretion. We do not substitute our decision for that of the District Court. The District Court issued a well-reasoned 24-page opinion addressing its chosen sanction, and we cannot find that its ultimate decision was arbitrary or unreasonable. Under the applicable standard of review, therefore, the District Court's decision was not an abuse of discretion. Pope I , ¶ 16.
¶19 On appeal in Pope I , Pope asked for this Court to remand to the District Court to determine the appropriate sanction. We did just that. On remand, Pope asked for a new trial "or any other sanction." The ***102 District Court did not grant Pope a new trial, but did issue "[an]other sanction," just as Pope had alternatively requested. On appeal here, Pope asks this Court to find that the District Court abused its discretion by not granting him a new trial and instead granting him an alternative sanction-as he requested at the District Court. We cannot find an abuse of discretion in this case, because the District Court both determined that Pope was not prejudiced by the State's discovery abuse and issued "[an]other sanction," as requested by Pope.
CONCLUSION
¶20 The District Court did not abuse its discretion with its chosen sanction for the State's discovery abuse.
¶21 Affirmed.
We concur:
DIRK M. SANDEFUR, J.
BETH BAKER, J.
JAMES JEREMIAH SHEA, J.
JIM RICE, J.